UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION - BAY CITY

IN RE:

DON'S DEA RU DAIRY FARM
PARTNERSHIP,
    Debtor.
_____/

Case No. 10-23779-dob
Chapter 12 Proceeding
Hon. Daniel S. Opperman

## Opinion Regarding Application for Attorney Fees

### Introduction

Counsel for Willima B. David filed an Application for Attorney Fees pursuant to the October 6, 2011, Order of this Court. Ms. David's counsel seeks attorney fees not only for himself, but for his predecessor in connection with services rendered to Ms. David regarding a lease between Ms. David and the Debtor. Ms. David is entitled to the reimbursement of attorney fees by virtue of the Real Estate Lease dated January 4, 2010 ("Lease"), which states in pertinent part:

> "Lessee shall pay all costs, damages, and expenses (including reasonable attorney fees and expenses) suffered by Lessor by reason of Lessee's default."

The Debtor timely objected to the Application for Attorney Fees and this Court conducted a hearing on January 5, 2012. After careful review of the Application for Attorney Fees, including the statements of services rendered by both Mr. Turnwald and the firm of Smith, Martin, Powers & Knier, P.C. and a comparison of those services to the actions taken on behalf of Ms. David in this case, the Court awards $6,250 in fees and costs of $630.70.

### Statement of Jurisdiction

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 157 and 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) (matters concerning the

1

administration of the estate) and (B) (allowance or disallowance of claims against the estate).

Findings of Fact

The Debtor filed a Chapter 12 petition with this Court on October 11, 2010. The Debtor has consistently maintained that it was a Lessee in regard to a Lease consisting of 160 acres of property owned by Ms. David. Ms. David, on the other hand, believed that she did not have such a Lease because she did not sign a Lease. As developed and determined subsequently, Ms. David did indeed sign a document entitled "Real Estate Lease," but her understanding of that document was not the same as written.

The Debtor owed annual rent to Ms. David and it was unclear as to whether the Debtor had paid the rent due December 31, 2010. As late as March 25, 2011, the Debtor claimed to be in compliance with the Lease, but also stated in its Motion to Assume Executory Contract that the funds equaling the rent payable on December 31, 2010, would be delivered concurrently with the Motion to counsel of Ms. David. As late as March 25, 2011, therefore, the Debtor was in default of a financial term of the Lease.

This conclusion is also consistent with the actions taken by both the Debtor and Ms. David in October, 2010, when Ms. David requested the Court to lift the automatic stay to continue a state court eviction action. This Court granted that relief, but, for reasons unstated, Ms. David never continued the state court eviction action. Given the significant delay, the Court concluded that a quicker resolution of the differences between the parties could be achieved in this Court. In the meantime, the Debtor filed a Motion for Violation of the Automatic Stay, as well as an objection to the claim of Ms. David, as amended.

A result of the Motion to Assume Executory Contract was the payment of past due rent and

the resolution of any outstanding issues regarding defaults of the financial terms and conditions of the Lease. What remained to be determined, however, was whether the Debtor had committed waste regarding the leasehold premises and had disrupted the rights of others. The Court conducted a hearing regarding these issues, which took the form of an objection to the proof of claim, and decided in favor of the Debtor with the exception of a gate that the Debtor testified was removed by employees of the Debtor. The Court ordered the gate to be reinstalled or that the Debtor pay $1,000 for the replacement of the gate. As counsel argued on January 5, 2012, the gate was reinstalled and no monetary damages were paid by the Debtor to Ms. David for the replacement or installation of the gate.

The Court has reviewed the statements of services for Ms. David's counsel and has deleted in its analysis any time entry recorded with a hundredth of an hour increment, as opposed to a tenth of an hour. By way of example, any entry originally reported as .25 is considered to be .2 for the Court's analysis.

Second, the Court has reviewed the statements of services and notes that the following services are not related to the specific services that are allowed for reimbursement under the Lease. In particular, the Court notes the following dates of services and amounts of time that are not related directly to the costs, damages, and expenses suffered by Ms. David as a result of the Debtor's default:

*Smith, Martin, Powers & Knier, P.C.*

| Date | Hours |
| --- | --- |
| 12/04/10 | 5.00 |
| 12/05/10 | 2.50 |
| 12/06/10 | 1.50 |
| 12/07/10 | .25 |

| *Date* | *Hours* |
|---|---|
| 12/08/10 | .25 |
| 12/09/10 | .25 |
| 12/10/10 | .25 |
| 12/15/10 | .25 |
| 12/23/10 | 2.75 |
| 12/28/10 | .50 |
| 12/29/10 | .50 |
| 12/29/10 | .25 |
| 01/14/11 | .75 |
| 01/17/11 | .50 |
| 01/21/11 | .40 |
| 01/21/11 | .20 |
| 01/21/11 | .20 |
| 01/25/11 | .50 |
| 01/26/11 | .50 |
| 01/26/11 | .10 |
| 01/27/11 | .20 |
| 01/27/11 | .25 |
| 01/28/11 | .40 |
| 01/28/11 | .50 |
| 01/28/11 | .10 |
| 01/31/11 | .70 |
| 01/31/11 | .40 |
| 01/31/11 | .20 |
| 02/11/11 | .20 |
| 02/14/11 | .10 |
| 02/14/11 | .50 |
| 02/16/11 | 1.00 |
| 02/16/11 | .40 |

*Gene F. Turnwald*

| Date | Hours |
|---|---|
| 04/08/11 | 1.5 |
| 04/12/11 | 1.2 |
| 04/14/11 | .8 |
| 04/18/11 | 1.5 |
| 04/18/11 | .4 |
| 04/19/11 | .5 |
| 04/19/11 | 1.2 |
| 04/19/11 | .4 |
| 04/27/11 | .8 |
| 04/29/11 | 1.2 |
| 05/06/11 | 1.0 |
| 05/09/11 | .6 |
| 05/12/11 | 1.5 |
| 05/27/11 | 1.0 |
| 05/31/11 | 1.5 |
| 06/02/11 | .3 |
| 06/06/11 | 1.0 |
| 06/10/11 | .4 |
| 06/10/11 | 1.5 |
| 06/16/11 | .5 |
| 06/20/11 | .9 |
| 06/21/11 | 1.3 |
| 06/22/11 | 2.5 |
| 06/22/11 | 1.5 |
| 06/24/11 | .4 |
| 06/27/11 | .5 |
| 07/05/11 | .4 |

| Date | Hours |
|---|---|
| 07/06/11 | 2.5 |
| 07/12/11 | 2.0 |
| 07/14/11 | 2.5 |
| 07/16/11 | 3.0 |
| 07/185/11 | 8.0 |
| 07/22/11 | .3 |
| 08/02/11 | .4 |
| 08/09/11 | .4 |
| 08/12/11 | 1.2 |
| 08/16/11 | .3 |
| 08/23/11 | 1.0 |
| 08/25/11 | .6 |
| 08/26/11 | .8 |
| 08/30/11 | .8 |
| 08/30/11 | .4 |
| 09/07/11 | .4 |
| 09/14/11 | .6 |
| 09/26/11 | .4 |
| 10/06/11 | 2.5 |
| 10/07/11 | .3 |

Analysis

Absent statutory authority or an agreement, parties are responsible for their respective attorney fees and costs. *In re Hardt v. Reliance Standard Life Ins. Co.*, 130 S. Ct. 2149, 2157 (2010) ("Each litigant pays his own attorney's fees, win or lose, unless a statute or contract provides otherwise." (citing *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 683 (1983))); *In re Temple Marital Trust (After Renand)*, 278 Mich. App. 122, 129, 748 N.W.2d 265, 269 (2008). In this case, the Lease allows Ms. David to recover all costs, damages, and expenses, including reasonable attorney fees and

expenses, suffered by her by reasons of the Debtor's defaults. The Court's analysis, therefore, must focus on the type of services rendered by counsel for Ms. David, as well as whether those fees are reasonable.

The Court has carefully reviewed the Application for Attorney Fees of Ms. David's counsel and notes that many of the services rendered to her by her counsel are not caused by or attributable to the Debtor's default. By way of example, there are certain entries regarding a claim by the Debtor that Ms. David and those associated with her violated the automatic stay. Other entries involve the review of pleadings filed by other creditors, such as Firstbank.

Some of these entries merit comment so as to explain why the Court allows recovery under this analysis. On January 29, 2011, counsel devoted 4 hours to the following: "Work on complaint; review client's file documents, lease agreement, estate planning documents, etc.; compile exhibits for complaint." The Court's analysis of this entry is that counsel spent considerable time drafting a complaint for the state court action, and in preparing to do so, counsel reviewed the Lease and various estate planning documents. Since the Debtor was in default, time spent on preparing a state district court action was appropriate. The Court takes into context the referral to "estate planning documents" as reviewing those documents to prepare the complaint and not the preparation of the estate planning documents.

Likewise, on March 17, 2011, counsel provided the following services: "Prepare for and attend hearing on our motions; attention to signing power of attorney." In regard to this entry, the Court concludes that counsel spent time in regard to signing a power of attorney that, as near as the Court can tell, was not directly related to the Lease. Accordingly, the Court will only allow 1.7 hours, as opposed to 3.5 hours.

Another entry in which the Court has decided to allow partial recovery is the May 12, 2011,

7

entry which states: "Trip to Bay City, 2 hearings re: Motion to Extend Stay, Claim Objection, Conf. with Selmans." Counsel for Ms. David devoted 2.5 hours to this entry. The Court will allow 2 hours for this entry because the specific breakdown between and among the various entries is not clear and a portion of the services appear to be unrelated to any default of the Debtor.

The other entries detailed in this Opinion regard claims by Ms. David that the Debtor committed waste or otherwise destroyed her property, such as by removing trees, sand, and gravel. As this Court has previously found, although these items may have indeed been removed from Ms. David's property, there is no evidence that the Debtor removed these items except for the benefit of Ms. David. Accordingly, the Court concludes that the services provided by counsel were not as a direct result of the default of the Debtor.

After reviewing the Application for Attorney Fees, the Court concludes that 34.5 hours of services rendered by Smith, Martin, Powers & Knier, P.C. are related to the default by the Debtor and, at the rate of $250 per hour, total $8,625. Likewise, 47.2 hours of services rendered by Mr. Turnwald are related to the default by the Debtor and, at the rate of $240 per hour, total $11,328. The expenses incurred by Ms. David's counsel of $630.70 are related to the Debtor's default.

The Court must next determine the reasonableness of the attorney fees and expenses. Under Michigan law, attorney fees under language similar to that in the instant case must be reasonable after reviewing the circumstances and the result. *In re Wood v. Detroit Automobile Inter-Ins. Exch.*, 413 Mich. 573, 588, 321 N.W.2d 653, 661 (1982) (the factors to be considered are: "(1) the professional standing and experience of the attorney; (2) the skill, time and labor involved; (3) the amount in question and the results achieved; (4) the difficulty of the case; (5) the expenses incurred; and (6) the nature and length of the professional relationship with the client") (quoting *Crawley v. Schick*, 48 Mich. App. 728, 737, 211 N.W.2d 217, 222 (1973)). In addition, the Debtor argues that *In re B&B*

8

*Enterprises, Inc.*, 100 B.R. 982 (Bankr. W.D. Tenn. 1989) requires this Court to specifically look at the result obtained in regard to the assumption of a lease under 11 U.S.C. § 365.

Applying these standards to the instant case, the Court notes that the Debtor entered into a Lease for the use of 160 acres, many of which were tillable, for $1,700 per year. Ms. David believed that this Lease was not enforceable and that the Debtor's use was interfering with hunting and other recreational uses granted by Ms. David to others. Moreover, Ms. David believed that the Debtor was improperly removing trees, sand, and gravel. Against this backdrop, members of the Debtor and those connected to Ms. David disagree vehemently as to the Debtor's use of this property, as well as the use by others. Otherwise, the Court would be hard pressed to understand why anyone would incur approximately $40,000 in fees and expenses to collect $1,700 annually. Additionally, the Court would be hard pressed to understand why experienced and intelligent attorneys would continue to argue for Ms. David with so little at stake monetarily.

Against this backdrop, the Court must also consider the reasonableness of the request as applied to the Lease in question, as well as the impact any awarded fees may have on other creditors, as well as the Debtor. While the Court initially concludes that $19,953 are fees that are directly caused by the Debtor's default, this number must be tempered as well by the "reasonableness" analysis imposed by the agreement, Michigan law, and *In re B&B Enterprises*. After reviewing the pleadings filed in this case, the amount at issue, and the other related issues, the Court concludes that an attorney faced with the issues presented by Ms. David would expend anywhere from 20 - 25 hours to analyze these issues, contact Debtor's counsel, and prepare the necessary documents in order to effect a resolution of the defaults of the Debtor. In making this determination, the Court concludes that it would take some time to sort through the documents and negotiate a resolution of what would appear to be a relatively straightforward issue of whether the Lease payments were in default. Many

of the issues presented to Ms. David's counsel are more in regard to Ms. David's belief that she did not sign the Lease or the belief of others associated with her that the Lease should not be enforced as urged by the Debtor. With some exception, those beliefs were ill-founded. With this analysis, allowing for approximately 3 full days of attorney time to perform these services, the Court concludes to only allow for the award of 25 hours of time at $250 per hour or $6,250 as an amount that is reasonable under the Lease, Michigan law, and persuasive federal bankruptcy law authority.

The Court acknowledges that counsel for Ms. David have, as near as this Court can tell, fulfilled all of their duties to Ms. David and have been zealous advocates of her rights in this Court. The Court does not doubt the diligence or skill of these attorneys and does not question their professionalism. Instead, the question before this Court is what fees are reasonable under the Lease and applicable law to be shifted from Ms. David to the Debtor. After analyzing this particular case, with these particular facts and with these particular parties, the Court concludes that $6,250 in fees and $630.70 in expenses should be paid by the Debtor.

Counsel for Ms. David is directed to prepare an Order awarding $6,250 in fees and $630.70 in expenses, consistent with this Opinion.

Not for publication

**Signed on January 26, 2012**

                                          **/s/ Daniel S. Opperman**
                                        **Daniel S. Opperman**
                                        **United States Bankruptcy Judge**

10

10-23779-dob    Doc 154    Filed 01/26/12    Entered 01/26/12 14:22:19    Page 10 of 10